UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MELVIN WILLIAMS, ET AL.                                          PLAINTIFFS

V.                                          CIVIL ACTION NO. 3:20-CV-785-DPJ-FKB

THE CITY OF JACKSON, ET AL.                                      DEFENDANTS

ORDER

Twenty-one Plaintiffs assert federal- and state-law claims based on their experiences

working for the Jackson Police Department (JPD).  In addition to suing the City of Jackson and

JPD, they also sue the following city employees, both individually and in their official capacities:

Mayor Chokwe Antar Lumumba (Mayor Lumumba), Police Chief James Davis, Deputy Chief

Deric Hearn, E. Bradley Lumumba (E. Lumumba), and Vincent Grizzell (the Individual

Defendants).  Compl. [1] ¶¶ 1–28; *id.* at 36–38; *see Schultea* Reply [33] at 1–2.[1]  This matter is

before the Court on Individual Defendants' qualified-immunity-based motions to dismiss [44,

45, 46, 47, 48].  For reasons that follow, the motions are granted in part.

I.      Procedural Posture

In December 2020, Plaintiffs filed a 42-page complaint that attached and incorporated

118 pages of statements and other evidence regarding a large number—and wide variety—of

claims against Defendants.  *See* Compl. [1].  The Individual Defendants jointly moved to dismiss

based on qualified immunity.  *See* Defs.' Mot. [20].  Plaintiffs responded in opposition.  *See* Pls.'

Resp. [24].

Plaintiffs' response did not squarely address Defendants' arguments.  But rather than

grant the motion to dismiss and give Plaintiffs an opportunity to file a motion for leave to amend

---

[1] *See Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995).

(which would have required briefing on the motion to amend and, most likely, another round of dispositive motions), the Court denied the Individual Defendants' motion without prejudice and gave Plaintiffs an opportunity to file a Rule 7 reply to clarify their positions and better address Defendants' qualified-immunity arguments. *See generally* Order [32] (requiring reply consistent with *Schultea*). The Order also explained what Plaintiffs would need to address to avoid dismissal. *Id.* Plaintiffs filed a reply. *See Schultea* Reply [33]; *see also* Pl.'s Resp. [35]  ¶ 1 (noting that "Plaintiffs['] Doc. [33] titled amended complaint is Plaintiffs['] Schultea reply."). The Individual Defendants then filed separate motions to dismiss, and Plaintiffs responded by essentially re-docketing their *Schultea* Reply (sans its sections on jurisdiction, venue, exhaustion, and identification of the parties). Defendants replied, and the briefing is now closed.

It should be noted that this Order addresses only the motions filed by the Individual Defendants. Accordingly, while some claims will be dismissed as to those defendants in their individual capacities, those claims survive as to the non-moving defendants.[2]

II.    Standard

The Individual Defendants seek dismissal of Plaintiffs' § 1983 claims based on qualified immunity. Section 1983 provides a cause of action for plaintiffs who can show "(i) deprivation of a federal right[] by (ii) action under color of state law." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Because there is no

---

[2] The Court's decision to deny the first qualified-immunity-based motion without prejudice was procedurally feasible at the time, but the Fifth Circuit recently overruled its precedents allowing Courts to defer ruling on a qualified-immunity-based motion to dismiss. *See Carswell v. Camp*, 37 F.4th 1062 (5th Cir. 2022). Regardless, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). In this case, the Court expressly stated that its order was intended to give Plaintiffs that opportunity. Order [32] at 20 n.10.

vicarious liability under § 1983, plaintiffs must show that a defendant's own conduct violated

their rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *accord Est. of Davis ex rel. McCully v.*

*City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Generally, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  Plaintiffs must instead plead "enough facts to state a claim to relief that is plausible on

its face." *Twombly*, 550 U.S. at 570.  Thus, overcoming a Rule 12(b)(6) motion requires

"[f]actual allegations . . . rais[ing] a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at

555 (citations and footnote omitted).

Qualified immunity, when relevant, "adds a wrinkle to § 1983 pleadings." *Arnold*, 979

F.3d at 266–67.  Qualified immunity "shields government officials from liability when they are

acting within their discretionary authority and their conduct does not violate clearly established

statutory or constitutional law of which a reasonable person would have known." *Cherry Knoll,*

*L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Protective &*

*Reg. Servs.*, 537 F.3d 404, 418 (5th Cir. 2018)).

Defendants asserting the defense "must first satisfy [their] burden[s] of establishing that

the challenged conduct was within the scope of [their] discretionary authority." *Bevill v.*

*Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (alterations in original) (quoting *Cherry Knoll*, 922

F.3d at 318).  "[T]he burden then shifts to the plaintiff to rebut the qualified immunity defense."

*Cherry Knoll*, 922 F.3d at 318.  That requires showing "that the state actor (1) violated a

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

challenged conduct." *Can. Hockey, L.L.C. v. Marquardt*, No. 20-20530, 2022 WL 252186, at *3 (5th Cir. Jan. 26, 2022) (citing *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016)).

Finally, when, as here, a court orders a plaintiff to file a Rule 7 *Schultea* reply in response to the assertion of qualified immunity, the plaintiff must "reply to that defense in detail.  By definition, the reply must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1432–33.  "The court then considers whether the complaint and [*Schultea*] reply 'support[ ]' the claim 'with sufficient precision *and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'" *Lee v. Morial*, No. 01-30875, 2002 WL 971519, at *4 (5th Cir. Apr. 26, 2002) (emphasis added) (quoting *Schultea*, 47 F.3d at 1434).

III.    Analysis

A.    Preliminary Analysis of Recurring Arguments

While the Court has examined each § 1983 claim Plaintiffs assert, Defendants' motions raise three recurring arguments regarding Plaintiffs' *Schultea* Reply and Complaint.  To avoid repetitiveness, the Court will now address those issues in greater detail.

First, Defendants say Plaintiffs take a shotgun approach that falls short of offering *fact-based* averments regarding *each* Individual Defendants' alleged violations.  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added).  For that reason, this Court stated in its Order requiring a *Schultea* Reply that Plaintiffs could "not use collective pleading."  Order [32] at 7 (capitalization altered); *see also Glover v. FDIC*, 698 F.3d 139, 147 (3d Cir. 2012) ("Rule 8(a) requires that a complaint be presented with clarity sufficient to avoid requiring a district court or opposing party

4

to forever sift through its pages in search of the nature of the plaintiff's claim.") (citation and quotation marks omitted); *accord Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (noting that "shotgun pleadings . . . fail to one degree or another, and in one way or another, to give the defendants adequate notice"); *Hartzog v. Hackett*, No. 2:16-CV-2-KS-MTP, 2017 WL 5640842, at *14 (S.D. Miss. Feb. 28, 2017) ("The Court has repeatedly admonished attorneys for a shotgun approach to pleadings.") (quotation marks omitted), *aff'd*, 711 F. App'x 235 (5th Cir. 2018).

Second, Defendants say Plaintiffs often provide legal conclusions rather than factual averments. For example, to show Defendants' individual conduct, Plaintiffs frequently assert that Defendants "conspired." *See, e.g.*, *Schultea* Reply [33] ¶ 54. The same thing happened in *Twombly*, where the Supreme Court held that allegations of a conspiracy and parallel conduct were mere conclusions that failed to plausibly suggest an agreement. 550 U.S. at 556–57 (explaining that complaint lacked "enough factual matter (taken as true) to suggest an agreement was made"). The averments in *Iqbal* were equally insufficient. There, the plaintiff pleaded

> that petitioners knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest. The complaint further alleged that Ashcroft was the principal architect of this invidious policy, and that Mueller was instrumental in adopting and executing it.

*Iqbal*, 556 U.S. at 680–81 (cleaned up). The Supreme Court described these allegations as nothing more than "bare assertions, much like the pleading of conspiracy in *Twombly*, [which] amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* (citation omitted).

The Fifth Circuit illustrated this distinction in *Floyd v. City of Kenner*, holding that it was not enough to plead that defendant "'participated in, approved and directed' the filing of false

and misleading affidavits." 351 F. App'x 890, 898 (5th Cir. 2009) (citation omitted). Moreover, once a *Schultea* reply has been ordered, the plaintiff must present "*sufficient precision and factual specificity* to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434.

Notably, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). This Court therefore instructed Plaintiffs that they carried the "burden to show that the qualified-immunity defense does not apply through non-conclusory factual averments." Order [32] at 6. Conclusions like "Defendants conspired" are not enough. *Iqbal*, 556 U.S. at 678.

Third, Defendants contend that Plaintiffs inappropriately rely on general legal standards when trying to show the clearly established law. The Court's Order requiring a *Schultea* reply expressly explained that

> not just any authority will do. [Plaintiffs] must show that the legal principles they assert are based on "a sufficiently clear foundation in then[-]existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). In other words, "[t]he rule must be 'settled law.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). And that "means it is dictated by **controlling authority or a robust consensus of cases of persuasive authority**." *Id.* at 589–90 (emphasis added) (citations and quotation marks omitted).

> Finally, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "[U]nless existing precedent 'squarely governs' the conduct at issue, an official will be entitled to qualified immunity." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citing *Brosseau*, 543 U.S. at 201).

Order [32] at 7. Indeed, the United States Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality. . . . This inquiry must be undertaken

in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citations omitted, punctuation altered).

This Court's Order requiring a *Schultea* reply summarized Plaintiffs' duty in this regard: "Thus, 'the plaintiff must 'identify[] a case in which an officer *acting under similar circumstances* was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer.'" Order [32] at 7 (quoting *Cope*, 3 F.4th at 204 (alteration in original) (emphasis added)); *see also Harris v. Jackson County*, 684 F. App'x 459, 462 n.6 (5th Cir. 2017) ("Importantly, [the plaintiff] fails to cite a single case . . . illustrating that the law is clearly established.").

To address those and other concerns Defendants raised in their initial motion to dismiss—and to give Plaintiffs another opportunity to adequately plead their claims and respond to Defendants' qualified-immunity arguments—the Court's Order requiring a *Schultea* reply listed what Plaintiffs would have to do to avoid dismissal. The Court—based on binding authority—stated that Plaintiffs were required to create

> a plausible inference that: "(1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct." [*Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012)].
>
> In this case, that task requires: (1) identifying the specific federal claims (it is not, for example, enough to generally say that the Fourteenth Amendment was violated, Plaintiffs must say how); (2) identifying which Plaintiffs assert each specific federal claim and the defendants against whom they are asserted; (3) identifying the specific facts that support those separate claims; and (4) as to each specific federal claim, the legal analysis demonstrating—through legal authority—that the alleged conduct violated Plaintiffs' rights and that those rights were clearly established at the time of the alleged violation.

Order [32] at 6–7.

The Court's Order also provided tailored instructions for each § 1983 claim Plaintiffs appeared to assert in their Complaint, emphasizing that, as to each, Plaintiffs would be required

to show that the rule barring Defendants' conduct had "a sufficiently clear foundation in then[-]existing precedent." *Id.* at 7 (alteration in original) (quoting *Wesby*, 138 S. Ct. at 589). With that, the Court turns to the specific claims.

B.      Free-Speech Claims

1.      Factual Background Drawn From *Schultea* Reply

In or "around May 2020," Police Chief James Davis required "each Plaintiff to make a sworn declaration" to keep secret "public information." *Schultea* Reply [33] ¶ 32; *see also* Pls.' Mem. [54] at 4 (stating Davis instructed them that "open records" were "privileged"). Plaintiffs base that claim on a code of ethics Davis allegedly ordered Defendants Grizzell and Hearn to circulate. *Schultea* Reply [33] ¶¶ 32, 38; *see* Compl. [1] ¶ 30. That document provided: "Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty." Code [33-3]. Plaintiffs argue that this policy violated their free-speech rights because it captured "open records," specifically 911 calls. *Schultea* Reply [33] ¶ 32 & n.3; Pls.' Mem. [54] at 4 n.2.

2.      Analysis

To begin, the Court's previous Order noted that "some Plaintiffs assert their claims based on the existence of the policy itself, whereas others claim that they were disciplined for breaking it. . . . Plaintiffs will need to state which context applies to their individual claims and then evaluate them under the appropriate test." Order [32] at 9. In their response to the pending motion, Plaintiffs maintain that "some" were forced to sign the Code of Ethics. Pls.' Mem. [54] at 8. But neither their memorandum nor *Schultea* Reply identifies which of the 21 named plaintiffs had been so forced. Absent that information, the Court will focus on the First Amendment claims related to the existence of the Code of Ethics.

Plaintiffs object to the Code as an invalid restraint on their speech.  It is well established that the state is afforded a "broader discretion to restrict speech when it acts in its role as employer."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2018).  But when the state restricts the right of its employees to speak "as . . . citizen[s] on . . . matter[s] of public concern[,] . . . the possibility of a First Amendment claim arises."  *Id.* at 418.

In a challenge to a blanket ban (as opposed to post-speech disciplinary action), courts must "balance . . . 'the interests of the [government entity], as an employer, in promoting the efficiency of the public services it performs through its employees," *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)), against "the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression," *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 468 (1995).  Notably,

> [p]reserving the confidentiality of government records and reports is essential to the efficient collection of information for use in the conduct of public affairs. . . . Disclosure of confidential law enforcement information not only thwarts enforcement efforts but may endanger the safety of officials charged with enforcing the law.  The Supreme Court [has] suggested that the government has particularly extensive power to control the disclosure of sensitive information within its custody, and that the government may sanction its employees where "the mishandling of sensitive information leads to its dissemination."

*United States v. Wallington*, 889 F.2d 573, 577, 578–79 (5th Cir. 1989) (upholding prohibition on disclosure where information was "confidential . . . in the sense that it [was] the official policy of the agency in question . . . that the information not be released") (quoting *The Florida Star v. B.J.F.*, 491 U.S. 524, 534 (1989)).

The Code, on its face, only captures what officers "see or hear *of a confidential nature* or . . . is confided to [them] in [their] official capacity," presumably including, according to Plaintiffs, 911 records.  Code [33-3].  Yet Plaintiffs allege that the Code captures non-

9

confidential information, contending that "the information that is demanded to be kept secret is suppose[d] to be what is known as **OPEN RECORDS** to the public." Compl [1] ¶ 30.

Under certain facts, overbreadth *may* violate a plaintiff's First Amendment rights. *See, e.g., Phillips v. City of Dallas*, No. 3:12-CV-3570-P; 2014 WL 11515862, at *4 (N.D. Tex. Aug. 29, 2014). But here, the specific question is whether Davis (and perhaps others) violated clearly established law by adopting this Code. Plaintiffs attempt to answer that question in two ways: First, they offer broadly worded caselaw. So, for example, Plaintiffs say they "have a right to freedom of their speech without being intimidated, harassed, [or] threatened," *Schultea* Reply [33] ¶ 35, and that "[a] public employee does not relinquish First Amendment Rights to comment on matters of public interest by virtue of government employment," *id.* ¶ 36 (footnote omitted) (quoting *Connick*, 461 U.S. at 140). As a general matter, those statements are partially true. But, as noted, generalities won't do. *See Mullenix*, 577 U.S. at 12.

Second, Plaintiffs repeatedly suggest that the specific Defendants were *subjectively* aware that their conduct violated the First Amendment. *Schultea* Reply [33] ¶ 37 ("Plaintiff further urges [that Defendants] . . . all knew or should have known they were violating Plaintiffs['] freedom of speech [as] upon information and belief the[y] had a meeting regarding the very document that was distributed."). This allegation is speculative and conclusory. In addition, qualified immunity is an *objective* inquiry—it is neither necessary nor sufficient for Plaintiffs to show that any Defendant had a culpable state of mind. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). As such, these suggestions are no substitute for the requisite caselaw.

Ultimately, Plaintiffs had the burden of finding a case that shows the alleged conduct violated clearly established law. *Cope*, 3 F.4th at 204. And while they argue the 911 calls constitute open records for which they have a First Amendment right to free speech, *Schultea*

Reply [33] ¶ 32 & n.3, they provide no legal support for that contention.  In fact, Mississippi law

does not treat 911 calls as open records:

> All emergency telephone calls . . . and all recordings of the emergency telephone
> calls, shall remain confidential and shall be used only for the purposes as may be
> needed for law enforcement, fire, medical rescue or other emergency services.
> These recordings should not be released to any other parties without court order
> or subpoena from a court of competent jurisdiction.

Miss. Code Ann. § 19-5-319(2).  There are exceptions, but they do not advance Plaintiffs'

argument.  *See, e.g.*, § 19-5-319(3) (allowing for release of some emergency call information

*upon written request*).

In sum, Plaintiffs have not identified legal authority suggesting that the Code of Ethics

violated their clearly established rights.  Accordingly, this claim is dismissed as to the Individual

Defendants based on qualified immunity.[3]

### B.    Establishment Clause Claims

#### 1.    Factual Background

Plaintiffs say Defendant Davis forced his religious beliefs on them.  Compl. [1] ¶ 32.

Plaintiffs first note that Davis gave an interview to a Christian magazine that produced an article

with the following quotes (some from Davis and some about his beliefs):  (1) "God will give you

wisdom";  (2) "Chief Davis also **WANTS OFFICERS** [sic] needs to be met, **ESPECIALLY**

**their mental, SPIRITUAL** and emotional needs"; (3) "**I WANT EVERY ONE OF MY**

**OFFICERS TO SIT DOWN WITH A (CHAPLAIN)**"; (4) "[i]f you're going to be A POLICE

---

[3] Plaintiffs also argue that Defendants Davis, Grizzell, and Hearn violated their clearly
established First Amendment rights by refusing to issue new body armor despite an agreement to
do so.  *See* Pls.' Mem. [54] at 5.  Though argued in the First Amendment section of Plaintiffs'
brief, they describe the conduct as a breach of contract.  *Id.*  Plaintiffs fail to explain how this
impacts their right to free speech and offer no legal authority suggesting that it does.  That said, it
is possible they put this discussion in the wrong section, so the Court will revisit it later.

[officer], you've got to have that SPIRITUAL FOUNDATION"; and (5) "it's important for

OFFICERS TO SEE LEADERS DO IT . . . . MY MEETINGS with MY EXECUVIE STAFF

STARTS [sic] with a PRAYER."  Pls.' Mem. [54] at 28–29 (citing Christian Magazine, Davis

Interview [33-13] at 5) (emphasis added by Plaintiffs); *see Schultea* Reply [33] ¶ 61.[4]

Aside from the interview, Plaintiffs claim Davis told his officers to pray and "force[d]

[them] to go to certain churches to eat a meal for free," subjecting Plaintiffs who refused to

"serious inquiry as to why they are not supporting a church."  Compl. [1] ¶ 32; *Schultea* Reply

[33] ¶¶ 68–69.  They also assert that Davis "caused each and every deputy under him . . . to

attend some sort of religious ceremony at his personal church in Jackson and on another occasion

at another church whereby a[] . . . preacher[] laid hands on the command staff . . . to keep them

from the devil."  *Schultea* Reply [33] ¶ 67.[5]

　　　　2.　　Analysis

The Individual Defendants say Plaintiffs have not pleaded individualized facts that state

plausible claims against defendants other than Davis.  As for Davis, he generally argues that

neither giving the interview nor the other alleged acts violate clearly established law.

Starting with defendants other than Davis, the *Schultea* Reply presents conclusory

assertions that will not survive qualified immunity and otherwise offers no clearly established

law.  For example, Plaintiffs claim Defendants conspired; that's insufficient.  *Twombly*, 550 U.S.

at 556–57.  As to Mayor Lumumba, they say he "is apart of the decision making process" and

---

[4] Plaintiffs also reference other comments from the interview that have no apparent link to an
Establishment Clause claim.  *See, e.g.*, *Schultea* Reply [33] ¶ 61 (quoting interview where Davis
discusses racism).

[5] Plaintiffs' *Schultea* Reply drops the averment in the Complaint that Davis wore religious
symbols on his uniform.  *See* Compl. [1] ¶ 32.  The Court assumes that claim is waived, and, in
any event, Plaintiffs have not shown a clearly established right.

had a duty to enforce City policy and the Constitution. *Schultea* Reply [33] ¶ 64 (sic). Those

allegations are even less factually specific than those found insufficient in *Twombly* and *Iqbal*.

Plus, "violating municipal policy does not equate to a constitutional violation 'if constitutional

minima are nevertheless met.'" Order [32] at 10 (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94

(5th Cir. 1996)). And the mayor is not subject to liability merely by virtue of his office. *See*

*Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (explaining that personal involvement, not

mere supervisory liability, is required to state a § 1983 claim); *see also Barnhill v. Hildreth-*

*White*, No. 21-50646, 2022 WL 3709815, at *1 (5th Cir. Aug. 26, 2022) ("[C]onclusional

assertion about [a] defendants' supervisory liability is insufficient to create a genuine factual

dispute regarding § 1983 supervisory liability.") (citing *Freeman v. Tex. Dep't of Criminal*

*Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).

 The only other Individual Defendants Plaintiffs mention more specifically (other than

Davis) are Grizell and Hearn: "Chief James Davis personally, and as the Chief, and Deputy

Chief Vincent Grizell and Deric Hearn consistently boasted on how he expects and tells

Plaintiffs working below him to seek God in their duties." *Schultea* Reply [33] ¶ 64. As it

relates to Grizell and Hearn, the averment is unclear and never indicates which Plaintiffs were

allegedly so informed. Assuming the statement is specific enough as to Grizell and Hearn,

Plaintiffs offer no legal authority suggesting that alleged statements—about what another

defendant does—violate clearly established law.

 Turning to Davis, Plaintiffs contend that he forces them to "adhere to HIS RELIGIOUS

BELIEFS." Compl. [1] ¶ 32. The Supreme Court

> has long held that government may not, consistent with a historically sensitive
> understanding of the Establishment Clause, 'make a religious observance
> compulsory.' *Zorach v. Clauson*, 343 U.S. 306, 314, 72 S. Ct. 679, 96 L. Ed. 954
> (1952). Government 'may not coerce anyone to attend church,' *ibid.*, nor may it

force citizens to engage in 'a formal religious exercise,' *Lee v. Weisman*, 505 U.S. 577, 589, 112 S. Ct. 2649, 120 L.Ed.2d 467 (1992)."

*Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2429, 213 L. Ed. 2d 755, (2022).  This law was clearly established at all relevant times.

According to Davis, Plaintiffs failed to show that merely giving an interview violated clearly established law.  *See* Defs.' Mem. [49] at 10.  He then construes the interview and posits that it "was not for the purpose of advancing or inhibiting a particular religion."  Defs.' Mem. [49] at 10.  He also notes that "no particular religion was referenced," *id.* at 10, and argues that the conduct did not violate the *Lemon* test, *id.* at 9–10.  Davis then saved the rest for reply, arguing there that Plaintiffs lack standing and that the intent or purpose of sending officers to church for meals was "not to advance or establish religion" but to "ensure that the church's efforts to support the department was not futile."  Defs.' Reply [61] at 5.

To begin, the Court does not read Plaintiffs' pleadings to suggest that their claims are based solely on giving an interview; it is the content of the interview, coupled with the other alleged facts, that premises the claims.  And to the extent Davis must explain his intent or argue for a different construction of what his officers may have inferred from his statements and conduct, that goes beyond the pleadings.  As noted, he is quoted as saying he wants all officers to visit with a chaplain and that "[i]f you're going to be a police officer, you've got to have that spiritual foundation."  Davis Interview [33-13] at 5; *see Schultea* Reply [33] ¶ 61.  It is also alleged that Davis tells his officers to pray, Compl. [1] ¶ 68, and compelled them to go to churches for meals to support the church, *Schultea* Reply [33] ¶ 69.  And while Davis argues that he never mentioned a specific religion, he cites no cases holding that the Establishment Clause allows promotion of religion over non-religion.  *See Morgan v. Swanson*, 659 F.3d 359, 411 n.27 (5th Cir. 2011) ("The First Amendment 'mandates governmental neutrality' not only among

14

different religions, but also 'between religion and non-religion.'") (quoting M*cCreary County v. ACLU*, 545 U.S. 844, 860 (2005)).

Finally, Defendants argue in their reply that Plaintiffs lack standing to sue Davis for forcing his deputies and third parties to pray and attend religious services. For starters, it does not appear that Plaintiffs are asserting claims based on those alleged acts but are highlighting them as evidence that Davis was attempting, more broadly, to coerce religion. Regardless, the Individual Defendants did not assert standing in their opening brief, and nothing in Plaintiffs' response to that brief opened the door for a new argument in reply (Plaintiffs' brief merely copies the *Schultea* Reply that was the subject of the Individual Defendants' opening memorandum). Accordingly, Plaintiffs have had no opportunity to respond to Defendants' standing argument, and it is the practice of "the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted). That said, the Court understands that standing is jurisdictional and this issue must be resolved. But, as noted, it is not apparent Plaintiffs are asserting claims based on what others were forced to do. Defendants are certainly free to revisit this issue (and must) if the Court's construction of Plaintiffs' pleadings proves incorrect.

Establishment Clause cases are difficult, and the legal landscape has been unsteady.[6] But the arguments offered for dismissal as to Davis are not yet compelling. There are enough facts,

---

[6] For example, Davis argues that the alleged conduct does not violate the *Lemon* test. *See* Def.'s Mem. [49] at 9–10 (citing *Lemon v Kurtzman*, 403 U.S. 602 (1971)). The Court mentioned that test, *among others*, in the order requiring a *Schultea* reply. *See* Order [32] at 10 (citing *Am. Humanist Ass'n v. McCarty*, 851 F.3d 521, 525 (5th Cir. 2017) (explaining Establishment Clause tests)). But the Supreme Court has abandoned the *Lemon* test in recent years. *See Kennedy*, 142 S. Ct. at 2427. If this issue is reasserted under Rule 56, it will be important for both parties to address whether that test was clearly established law when the alleged acts occurred.

assumed as true, to nudge Plaintiffs' "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

C.    Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment states: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[S]tate and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts against those who work under them." *Raspardo v. Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014); *accord Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) ("Critically, '[u]nlike Title VII, § 1983 applies to individuals.'" (quoting *Sims v. City of Madisonville*, 894 F.3d 632, 640–41 (5th Cir. 2018) (per curiam))).

Equal-protection claims generally come in two forms, those dealing with protected classes and those addressing a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). To establish the first, "a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999). For a class-of-one claim, the plaintiff must show "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. Plaintiffs assert both types of claims.

First off, class-of-one claims cannot be brought in the public-employment context, as rational basis review would impermissibly restrict "the broad discretion that typically characterizes the employer-employee relationship." *Engquist v. Or. Dep't of Agric.*, 553 U.S.

16

591, 605 (2008); *accord Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) ("[C]lass-of-one equal-protection claims are inapposite in the context of discretionary public-employment decisions." (citing *Engquist*, 553 U.S. at 603)).

In its Order requiring a *Schultea* reply, this Court instructed Plaintiffs to address *Engquist* if they intended to raise class-of-one equal-protection claims. Order [32] at 11. Though they never mention *Engquist* or a class-of-one theory by name in their *Schultea* Reply or memorandum, Plaintiffs *seem* to advance some class-of-one claims. For example, they allege that the payment schedule for the Mayor's bodyguards yields a § 1983 "equal treatment" claim because it "reviews [sic] a disparity in the treatment of all employees of the City of Jackson." *Schultea* Reply [33] ¶ 122. Such claims do not appear to assert class-based discrimination, and if Plaintiffs intended to state class-of-one claims, then they must be dismissed under *Engquist*.

Turning to the class-based claims, some of the claims relate to all Plaintiffs, some address groups, and others are individually asserted. This Order starts with the collective claims and then turns to the individual disputes.

1. Filling Acting Sergeant Vacancies

a. Factual Background

Every Plaintiff alleges that Davis violated their equal-protection rights "around or near February or March 2020," Compl. [1] ¶ 54, when he, without a competitive hiring process, reappointed all acting sergeants, *id.* ¶ 34. Plaintiffs say this decision contradicted city policies restricting such appointees to 120 days of service and requiring a competitive process. *Id.* ¶¶ 34, 54 (citing Personnel Actions [1-6] at 2). In their *Schultea* Reply, Plaintiffs state that each Plaintiff asserts this claim against Davis, Hearn, Grizzell, and Mayor Lumumba. *Schultea* Reply [33] ¶¶ 41–42. According to them, these Defendants "hand picked all men of their favorites,

rather than either woman as the women Plaintiffs in this suit whom were more qualified than the chosen men for acting sergeant." *Id.* ¶ 42 (sic). They further say the passed-over women had more experience and better qualifications. *Id.*[7]

        b.     Analysis

The Court's Order required a reply that "identif[ied] the specific facts that support" Plaintiffs' separate claims. Order [32] at 6. Defendants argue that Plaintiffs' *Schultea* Reply failed to include such facts. *See* Defs.' Mem. [49] at 5. Plaintiffs could have specifically addressed that in a response to the motions but instead refiled their *Schultea* Reply, likely believing that they had said enough while arguing that "[t]he Court must take the statements in this pleading as true." *Schultea* Reply [33] ¶ 46. But the presumption of truth is "inapplicable to legal conclusions" and "conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Thus, the Court must determine whether the averments reflect facts or conclusions. As suggested by the United States Supreme Court, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

---

[7] The Complaint asserted due-process claims related to the sergeant vacancies under the Fifth and Fourteenth Amendments to the Constitution, prompting the Court to instruct Plaintiffs to explain how the Fifth Amendment could be implicated absent a federal actor. *See* Order [32] at 11. Plaintiffs offered no response to that point, so any Fifth Amendment due-process claim must be dismissed. As for Fourteenth Amendment due-process claims, Plaintiffs did not include that theory among the separate substantive sections of their *Schultea* Reply or in their response to Defendants' motions. They did use the term "due process" three times, but it appears under the heading "Violation of Plaintiffs['] Equal Protection." *See* Pls.' Mem. [54] at 11, 18, 22. They never otherwise address due process, never indicate whether their due-process claims are substantive or procedural, and never offer legal analysis or authority suggesting that the alleged conduct violated clearly established due-process rights. Accordingly, the Court will consider the claims under the Equal Protection Clause.

entitled to the assumption of truth." *Id.* at 679.  Here, Plaintiffs offered the following averments

regarding Defendants' individual conduct related to the promotion issue:

> Mayor Lumumba, in his professional and personal capacity, The City of Jackson Police Department along with its Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity, as well as the The City of Jackson under the leadership of Lumumba acquiescing the unequal treatment to each Plaintiff, denied Plaintiffs choose police officers with less qualifications of experience and time on the job, and hand picked all men of their favorites, rather than either woman as the women Plaintiffs in this suit whom were more qualified than the chosen men for acting sergeant.

*Schultea* Reply [33] ¶ 42 (sic).

> Now all Plaintiffs, including the few carved out with their evidence eavers that the desperate treatment and violation fo the 14th U.S. Constitutional Amendment by "ALL" Defendants including Mayor Lumumba individually and in his professional capacity, The City of Jackson ratifying the wrong conduct, The City of Jackson Police Department with Chief James Davis professionally and personally, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity have done the ill conduct shown in the preceding paragraphs and such statements must be taken as true. . . . The Court must take the statements in this pleading as true and that statement is that not even one of the above Plaintiffs were offered the opportunity nor provided the same of an acting sergeant with the Jackson Police Department.  In short, Plaintiffs assert that Defendants Mayor Lumumba in his official and individual capacity, The City of Jackson Police Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity, exemplified disparate treatment under the law that was clearly established at the time of the violation.

*Id.* ¶ 46 (sic) (footnotes omitted).

> The City of Jackson in its ratification of the Mayor's conduct toward Plaintiffs, The City of Jackson Police Department, Chief James Davis professionally and individual capacity, Deputy Chiefs Deric Hearn, and Vincent Grizell in their professional and personal enforcement of causing Plaintiffs to suffer because Plaintiffs filed lawsuit, as well as because they have conspired with the aforementioned Defendants to pick and choose certain officers for acting sergeant positions through a pattern and custom of choosing.  Accordingly, all of the named Defendants knew or should have known that the acts alleged hereto violated protected constitutional rights when they as the policy makers and enforcers of the City of Jackson and the Jackson Police Department's written policies as attached hereto were in strict and complete violation of Plaintiffs clearly established constitutional rights[.]

*Id.* ¶ 52 (sic).

> "All Defendants" participated in hand picking unqualified friends and favorites of their choosing and against the policy and procedure that is written in the City of Jackson own General Orders."

*Id.* ¶ 53 (sic).

> In the case before this honorable Court, Plaintiffs have demonstrated with facts that Defendants The City of Jackson through its Mayor, Lumumba, his controlling manager of the City of Jackson Police Department E. Bradley Lumumba, aka (Hondo), Deputy Chief Hearn and Grizzell professionally and individually that there is a consistent pattern and practice of violating established U.S. Constitutional 14th, § 1983 as well as the protected equal protection from desperate treatment rights.

*Id.* ¶ 56 (sic).

These averments are like those in *Iqbal* regarding the personal involvement of defendants Ashcroft and Mueller.  556 U.S. at 680–81 (rejecting as conclusory the allegation that "Ashcroft was the 'principal architect' of this invidious policy, and that Mueller was 'instrumental' in adopting and executing it").  Moreover, Plaintiffs have not pleaded facts plausibly showing that they *each* were similarly situated to the reappointed sergeants or that *each* individual plaintiff was better qualified (or what made them better qualified).  Accordingly, this claim is dismissed as to the Individual Defendants.

Defendants make one additional argument in their memorandum, stating that it does not violate equal protection to make an employment decision "based on a favorable relationship" with the decisionmaker.  Defs.' Mem. [49] at 6.  But that argument short-changes Plaintiffs' position.  Plaintiffs say the decision was based on gender as "not [1] female was given the temporary sergeant position at all times relevant to this suit."  *Schultea* Reply [33] ¶ 44.  Had Plaintiffs plausibly pleaded facts showing the decisions were based on gender, then "the failure to promote an employee based on their membership in a protected class was constitutionally proscribed at the time of the purported misconduct."  *Stark v. Univ. of S. Miss.*, 8 F. Supp. 3d

825, 838 (S.D. Miss. 2014) (citing *Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984)).  So, if the claims had been properly pleaded, Defendants' alternative argument would not work for the women's claims but would for the male plaintiffs' claims.  Regardless, the motions are granted as to this collectively pleaded equal-protection claim for the reasons stated.

        2.      Issuing New Bullet-Proof Vests and Other Equipment

        a.      Factual Background

"[E]ach Plaintiff avers that the City of Jackson, The Jackson Police Department, Chief James Davis, Deputy Chief Vincent Grizzell and Deric Hearn all promised contractually to provide Plaintiffs with a bullet proof vest(Body Armor)."  *Schultea* Reply [33] ¶ 33 (sic). Plaintiffs did not receive the vests, and they claim that this was discriminatory because the city provided the vests to new officers.  *Id.*  Plaintiff Daniels similarly claims that she was not issued certain equipment.  *Id.* ¶ 42.

        b.      Analysis

To begin, the Court instructed Plaintiffs to "identify[] a case in which an officer acting under similar circumstances was held to have violated the [Constitution], and . . . explain[] why the case clearly proscribed the conduct of that individual officer."  Order [32] at 7 (quoting *Cope*, 3 F.4th at 204).  As noted, an equal-protection claim requires proof that the defendant "discriminated against the plaintiff because of membership in a protected class."  *Williams*, 180 F.3d at 705.  Plaintiffs cite no cases suggesting that merely breaching a contract or promise violates clearly established equal-protection rights; the Court is aware of none.  They likewise offered no authority suggesting that existing employees are considered a protected class when compared to new recruits.  Defs.' Reply [61] at 3.  And, if they are not making a class-based claim, then the claim fails under *Engquist*, 553 U.S. at 605.  In any event, Plaintiffs have not met

their burden of showing Individual Defendants violated clearly established law.  *Wesby*, 138 S.

Ct. at 589.  Plaintiffs' equal-protection claims related to bullet-proof vests and other equipment

are dismissed as to Individual Defendants.

### 3. The Investigation of Plaintiffs Rekasha Adams, Amelia Bolden, and Ucona Carter

Adams, Bolden, and Carter all assert that because they are women, Defendants targeted

them for investigation related to a leaked mugshot.  *See* Compl. [1] ¶ 30; Adams Statements [1-

11] at 18–19; *Schultea* Reply [33] ¶ 79.  That investigation allegedly included polygraph tests.

*Schultea* Reply [33] ¶ 79.

Defendants offered one argument for dismissing these claims:  Plaintiffs "failed to

identify the conduct exhibited by each of the [I]ndividual [D]efendants concerning the polygraph

examination."  Defs.' Mem. [49] at 12.  As noted, Plaintiffs did not directly address Defendants'

arguments and instead refiled their *Schultea* Reply, in which they assert that "each Defendant

named . . . out of nothing short of a power position over women under their authority . . .

conspired and caused, forced, made or even demanded that [the] female officers . . . submit to a

Polygraph Test."  *Schultea* Reply [33] ¶ 79.

As noted, collective pleading is not permitted, and conclusory assertions of conspiracies

fall short.  *See* Order [32] at 7; *see also Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir.

2019) (holding that "[c]onclusory allegations [of a conspiracy] that do not reference specific

factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy

claim under § 1983").  Defendants' motions are granted as to the equal-protection claims

asserted by Adams, Bolden, and Carter regarding the mugshot investigation.[8]

---

[8] In the *Schultea* Reply, Adams and other Plaintiffs incorporate attached statements or memos.
*See, e.g.*, Adams Memos [53-8].  Adams says in one of hers that "Commander Coleman"

4.    Adams's Reassignment and Alleged Harassment

Plaintiff Rakasha Adams says that in response to two fatal shootings, she was punished by way of reassignment to demoralizing positions—punishment she further contends was not inflicted upon "m[ale] police officers who[] had a shooting incident."  Compl. [1] ¶ 43; *see* Adams Statements [1-11] at 12–15, 17 (stating Adams was moved eight times in under two years and describing her "horrible" and "demoraliz[ing]" assignment at the Animal Control Center); *see also Schultea* Reply [33] ¶ 43.  She also alleges that after one fatal shooting, Mayor Lumumba told someone that Adams was "trigger happy."  *See Schultea* Reply [33] ¶ 43.

Defendants argue that the trigger-happy claim is the only one for which Adams identified individual conduct and any claim based on that lone statement fails because Adams never identified legal authority suggesting a clearly established right.  Defs.' Mem. [49] at 7. Defendants are correct.  Adams offers no legal authority suggesting that the trigger-happy statement violated her clearly established rights, so that claim must be dismissed as to Mayor Lumumba (and the other moving Defendants to the extent they are generally included).  *Wesby*, 138 S. Ct. at 589.  If there is more to this part of the equal-protection claim, it has not been plausibly pleaded.

Turning to the reassignment and harassment claims, Individual Defendants are again correct that Adams failed to explain their personal involvement.  "Because vicarious liability is

instructed her to take the polygraph, and she complained to "Chief Robinson."  Adams Statements [1-11] at 18.  But neither Coleman nor Robinson are defendants in this action.  So those statements do not support the claims against the Individual Defendants.  The Court also notes that Adams's memos include complaints that are not included in the *Schultea* Reply.  For example, Adams claims that Commander Tyrone Buckley harassed her because of her uniform. *Id.* at 2.  Buckley is not a defendant, so perhaps Adams intentionally excluded that dispute from the reply.  While the Court endeavored to consider the whole record, the Buckley accusations show why the Court will consider only those claims specifically addressed in the *Schultea* reply.

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). Conclusory assertions of individual action are not enough. *Id.* And here, Adams's attached (and incorporated) statement claims that "Chief Robinson" made the disputed decisions. Adams Statements [33-8] at 7–8. Robinson is not a defendant in this case.

Adams does, however, mention Hearn in her attached statement, claiming that he attended the meeting during which Robinson reassigned her. *Id.* at 7. This is never mentioned in the *Schultea* Reply, and Plaintiffs offer no legal authority suggesting that it violates clearly established law to attend a meeting where an adverse decision is conveyed. *Wesby*, 138 S. Ct. at 589.

As to the other Individual Defendants, Plaintiffs may not collectively plead that "all Defendants" engaged in a conspiracy without specific facts. *See Montgomery*, 759 F. App'x at 314 ("Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under § 1983."); *see also Twombly*, 550 U.S. at 556–57 (holding that conclusory assertion of conspiracy and parallel conduct was insufficient to establish an agreement was made). Defendants' motions are granted as to Adams's equal-protection claims.

5.    Plaintiff Terrance Tiller's Claim

Tiller was a veteran JPD officer who was involved in a fatal shooting. *Schultea* Reply [33] ¶ 47. He claims that after the shooting—and before an investigation or grand-jury indictment—Mayor Lumumba released his photograph to the public. *Id.* ¶¶ 47–49. According to Tiller, this violated city policy and his equal-protection rights. *Id.* ¶¶ 49–51. He then says

Davis, Grizzell, and Hearn "participat[ed] with the harm that [h]as caused . . . severe emotional distress and mental anguish." *Id.* ¶ 50. These allegations do not survive qualified immunity.

First, the Court instructed Plaintiffs to "go beyond city policy and . . . cite binding authority, or a robust consensus of persuasive authority, reflecting their clearly established rights in this context." Order [32] at 10. Even if the mayor breached city policy (Defendants say Tiller misreads it) that breach would not alone establish a constitutional violation. *Myers*, 97 F.3d at 94. Second, Tiller cites no authority suggesting that releasing the photograph violated his clearly established rights. *Wesby*, 138 S. Ct. at 589. Third, to establish an equal-protection claim, Tiller must show disparate treatment between himself and similarly situated comparators outside his protected class. *Williams*, 180 F.3d at 705; *see also Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599–600 (5th Cir. 2021) (affirming dismissal of Title VII disparate-treatment claims because plaintiff failed to plead any "facts about any comparators at all. . . . Notably, there [was] no allegation that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as Olivarez received more favorable treatment."), *cert. denied*, 211 L. Ed. 2d 401, 142 S. Ct. 713 (2021)). Tiller has not identified any comparators by name or shown that their circumstances were nearly identical.

Finally, as for the Individual Defendants other than Mayor Lumumba, Tiller offered only conclusory assertions that did not comply with the Court's Order [32] to provide defendant-specific facts. *See Iqbal*, 556 U.S. at 676. Accordingly, the other Defendants are entitled to dismissal on this additional basis. The Individual Defendants' motions are granted as to Tiller's equal-protection claim.

6.      Plaintiff Candice Ingram's Claim

Plaintiff Candice Ingram was an inventory controller for JPD; in this role, she was required to "report stolen merchandise that officers . . . might . . . have been accountable for." *Schultea* Reply [33] ¶ 89. "As a result," she says, "in a conspired effort to pressure this woman to quit or to even terminate her, Defendants named hereto[] began a rigorous campaign to make Ingram's job impossible to perform." *Id.*

Defendants make one argument on this claim, that the *Schultea* Reply "does not identify specific conduct exhibited by the individual [defendants] Lumumba, Bradley, Hearn, and Grizzell." Defs.' Mem. [49] at 12. That much is true. The only mention of a defendant other than Davis is the statement that Grizzell described Ingram as a "civilian" in a memo—a description with which Ingram agrees. *Schultea* Reply [33] ¶ 92. Otherwise, the *Schultea* Reply offers no specific facts related to the other Individual Defendants. For the reasons stated throughout this Order, the motions filed by Individuals Defendants other than Davis are granted as to this claim. Davis made no such argument, so the claim moves forward as to him.

7.      Plaintiff Tammy Heard's Claim

The *Schultea* Reply offers few facts regarding Heard but states generally that she was treated differently due to her "sex and sexual orientation." *Schultea* Reply [33] ¶ 86. In a paragraph that addresses her claims (as well as others), Plaintiffs state that: (1) Mayor Lumumba met with JPD officers to discuss morale; (2) Mayor Lumumba failed to terminate Deputy Chief Tina Wallace after promising to do so; (3) "Davis lack of management skills over Tina Wallace was at issue" (sic); and (4) morale got worse under Defendants and they lied about it. *Id.*

Based on that, Heard, Daniels, Burnett, and Rigsby conclude that they earnestly

believe that the Mayor breached that promise and is allowing the Chief of police and his deputies to negligently and recklessly inflict emotional distress onto them because Plaintiffs Tammy Heard, Rhonda Daniels, Mammie Burnett and

26

>   Pammela Rigsby are females whom happens to also have their sexual orientation
>   as gay.

*Id.* ¶ 87 (sic) (footnotes omitted).  Later, they "contend that they have demonstrated that not only

was the constitutional established at all times relevant to this suit, but even that these Defendants

knew and had a duty to know that their actions violated a reasonable person[s] standard as

required by law," referencing municipal liability (which is not yet before the Court).  *Id.* ¶ 96

(sic).

Heard offers no legal authority suggesting that broken promises, bad morale, or lying

violate her clearly established equal-protection rights.  *See Wesby*, 138 S. Ct. at 589.  Breaching

city policy is not enough.  *Myers*, 97 F.3d at 94.  Nor is Defendants' subjective intent.  *Harlow*,

457 U.S. at 815.  And the averments are otherwise too general to overcome qualified immunity.

*See Iqbal*, 556 U.S. at 676.  For example, Heard "failed to plead any facts indicating less

favorable treatment than others 'similarly situated' outside of the asserted protected class."

*Olivarez*, 997 F.3d at 600.  On this record, the Individual Defendants' motions are granted as to

Heard's claim.[9]

### 8.    Plaintiff Garry Arthur's Various Claims

Arthur says that, since 2017, he has been subjected to discriminatory treatment on

account of his race (Caucasian).  Compl. [1] ¶ 49.  First, he says that he was forced into an

accident-reconstruction-investigation unit in Precinct 2, a position for which he did not apply.

Arthur Aff. [33-20] ¶ 3.  Second, he alleges that he was forced to continue working that unit,

even though that work both resulted in and exacerbated his post-traumatic-stress disorder.

---

[9] Although Heard pleaded no facts supporting her equal-protection claim in the *Schultea* Reply,
her Complaint mentions that she was forced to repeat training because she is a woman.  Compl.
[1] ¶ 45.  Assuming Heard intended to pursue this claim and can overcome the fact that the
Reply did not specifically address it as instructed, her allegations in the Complaint were
conclusory as to the causation prong.  *See Olivarez*, 997 F.3d at 600.

Compl. [1] ¶ 49.  Third, Arthur says he was denied access to training school while a Black

coworker was granted such access.  *Id.* (alleging Michael Outland received permission to attend

recommended training but Arthur did not); *accord Schultea* Reply [33] ¶ 104.  Finally, Arthur

complains that, partially in response to a disagreement between him and former Chief Lee

Vance, he was "***treated differently***" on account of his race, including denial of a new take-home

vehicle.  *Schultea* Reply ¶ 105.

Davis is the only Individual Defendant against whom Arthur makes factual assertions,

claiming that Davis gave an open position to a Black officer with less time in service than

Arthur.  *Schultea* Reply [33] ¶ 107.  The Court finds that Arthur has met his burden and denies

this portion of Davis's motion.

The other Individual Defendants, however, are addressed collectively with respect to the

decisions involving Arthur.  *See, e.g.*, Arthur Aff. [33-20] ¶ 3 ("The City of Jackson moved me

to investigations from Precinct 2."); Compl. [1] ¶ 49 ("Defendants were made aware of [Arthur's

PTSD diagnosis] but refused to relocate [Arthur] because of his race."); *Schultea* Reply [33]

¶ 103 (Arthur "was the target of racial discrimination by these Defendants"); *id.* ¶ 104 ("Plaintiff

further contend[s] that he was denied by these same Defendants to attend training school . . . .");

*id.* ¶ 105 ("JPD has consistently treat[ed] me different than Black Officers including when I was

denied a new take home vehicle . . . .").  Other than Davis, the motions are granted as to Arthur's

equal-protection claims.[10]

---

[10] Arthur does allege that Mayor Lumumba "discarded" white police officers and "encourage[d]" Black people.  *Schultea* Reply [33] ¶ 107.  But those conclusory assertions do not link the mayor to the specific decisions involving Arthur.

9.    Plaintiff Robert Watts's Claim

Watts says that his application for reinstatement was rejected because the City discriminates against white applicants.  Compl. [1] ¶ 50; Watts Docs. [1-13] at 1–2 (EEOC Position Statement).  As an initial point, reinstatement decisions, like hiring decisions, clearly affect "job duties, compensation, [and] benefits" and thus qualify as "adverse employment actions" triggering clearly established equal-protection rights. *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281–82 (5th Cir. 2004)).  The question becomes whether Watts has said enough to overcome qualified immunity.  The Court concludes that he has.

For starters, Watts has offered non-conclusory facts indicating that Davis was personally involved in the decision and was the one who would sign off on it.  *See* Watts Docs. [33-21] at 7. He also avers, on information and belief, that Individual Defendants met to discuss rejecting his application. *See Schultea* Reply [33] ¶ 112.  To establish causation, Watts asserts a pretext argument.  First, he says Defendants claimed that he was denied reinstatement because he was under federal investigation when he left JPD but that the accusation "was simply untrue." *Id.* ¶ 111.  He further supports that assertion by observing that he was offered a job with the Federal Bureau of Prisons the same year he was supposedly under federal investigation. *Id.* (citing BOP Email [33-21] at 2).  Second, he states that he was eligible for rehire under JPD General Orders. *Id.*  Finally, he contends that, during the relevant period, none of JPD's rehires were white. *See* Watts Docs. [33-21] at 7.  These are non-conclusory assertions that must be viewed in the light most favorable to Watts.  Collectively, they offer "sufficient precision and factual specificity to

raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'"
*Schultea*, 47 F.3d at 1434. Defendants' motions are denied as to this aspect of Watts's claim.[11]

### 10.    Plaintiff Pamela Rigby's Claim

Rigby asserts discriminatory treatment she attributes to her race, gender, and sexual orientation. Compl. [1] ¶¶ 36–40, 42; Rigby Statements [1-10] at 8–9. She contends that she and other white officers were given more work-intensive cases than their Black coworkers. Rigby Statements [1-10] at 1–2; Compl. [1] ¶ 42.

Defendants argue that Rigby limits the specific allegations of her *Schultea* Reply to Mayor Lumumba and Davis and that the other Individual Defendants should be dismissed. Defs.' Mem. [49] at 15. That is mostly true. Rigby offers collective and conclusory assertions against the other Individual Defendants, but the statement attached to her *Schultea* Reply does mention Hearn more directly. Rigby Statements [1-10] at 3–4. That said, she offers no authority suggesting that the limited conduct ascribed to Hearn in that statement violated clearly established law. The motions by Mayor Lumuba and Davis are denied as to Rigby's equal-protection claim; all others are granted.

### 11.    Plaintiff Mamie Barrett's Claims

Barrett, a crime-scene investigator, says that, unlike male crime-scene investigators, she was not given hot water, water pressure, or gloves to process biohazardous material. Compl. [1] ¶ 44; *Schultea* Reply [33] ¶ 114. She also complains that Defendant Davis embarrassed and unfairly criticized her in a meeting related to her evidence-collection practices on a "highly publicized" case. *Schultea* Reply [33] ¶ 114 & n.36; Compl. [1] ¶ 44. Specifically, after telling

---

[11] As Defendants note, Watts is listed among those Plaintiffs with free-speech claims. Those claims are dismissed as to Watts and the others for the stated reasons, but Watts's claim fails for the additional reason that he does not claim to have been an employee at the time the Code was adopted restricting employee disclosure of confidential information.

Davis that another officer had recovered a firearm, Davis said, in Grizzell's presence, "[W]ell[,] I'm sorry you[']r[e] not properly trained to do your job." *Schultea* Reply [33] ¶ 114.

Barrett contends that such a comment would not have been directed at a "**male nor Black policeman** . . . and [Barrett] believes that such harassment treatment was due to the fact that she is a white woman." *Id.* (sic). She also asserts that being "legally married seems to have caused these named Defendants to treat [her] differently," though she never explains how. *Id.* ¶ 88 n.29.

Barret does not allege how the Individual Defendant were personally involved in the decision to deny her equipment. *See* Defs.' Mem. [49] at 13. Instead, she offers conclusory allegations that various Defendants discriminated against her or violated City policy. *See, e.g.*, *Schultea* Reply [33] ¶ 114 (stating that claims exist against Mayor Lumumba for failing to follow City policy and "Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, **instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally as it relates to race discrimination against person[s] of the Caucasian race**" (sic)). Alleging a violation of City Policy is not enough. *See* Order [32] at 10 (citing *Myers*, 97 F.3d at 94). And the averments regarding individual conduct are too conclusory to meet Plaintiff's burden as to the equipment. *See id.* at 6 (citing *Khan*, 683 F.3d at 194).

Turning to Davis's remarks, Barrett says Grizzell was present, but she offers neither facts nor legal argument suggesting that mere presence when someone else makes a derogatory statement violates clearly established equal-protection rights. *Id.* Grizzell's motion must be granted. So too, there are no factual allegations linking the Individual Defendants (other than Davis) to this event, so their motions will be granted. *Id.* at 6–7.

The facts are pleaded as to Davis, but Barrett has not identified any cases suggesting that a negative comment like this would violate her clearly established equal-protection rights. *Wesby*, 138 S. Ct. at 589.  In fact, verbal reprimands do not constitute adverse employment actions, *King*, 294 F. App'x at 85, and conclusory assertions and subjective beliefs are inherently insufficient, *see Iqbal*, 556 U.S. at 678; *Harlow*, 457 U.S. at 815.  The Individual Defendants' motions are granted as to Barrett's disparate-treatment claims.[12]

> 12.    Plaintiff Rhonda Daniels's Claims Related to Harassment

Daniels says she was given disproportionate work assignments and harassed by Sergeant Cedric Myles while on sick leave; she attributes this treatment to her gender and sexual orientation.  Compl. [1] ¶¶ 39, 40; Daniels Statements [1-9] at 4–5.  She also presents several memoranda she authored to further support her claim:

(1)  an October 23, 2017 memorandum sent to former Police Chief Vance (and former Assistant Chief Allen White) complaining of Myles's conduct, Daniels Mem. [33-10] at 1, 3;

(2)  a November 12, 2018 memorandum (coauthored with her, Melvin Williams, and Tonia Williams) to Chief Davis and Deputy Chief Hearn requesting additional staffing for the Auto Theft Division, *id.* at 2; and

(3)  a September 13, 2021 memorandum to Sergeant Bolden requesting a taser gun, a city-issued rifle, and a new bullet proof vest, *id.* at 4.

Daniels also offers a memorandum from Bolden to Commander Randy Avery relaying and endorsing Daniels's request for equipment.  *Id.* at 5.  But Myles, Vance, Bolden, and Avery are

---

[12] In its Order, the Court noted that some Plaintiffs mentioned "harassment" in their statements but that it was unclear whether Plaintiffs intended hostile-work-environment claims because no such claims were pleaded in the Complaint.  The Court therefore stated that "[i]f such claims are intended, then they will need to be explained."  Order [32] at 17.  Neither the *Schultea* Reply nor Plaintiffs' response to Defendants' motions examined the law applicable to hostile-work-environment claims, so the Court assumes there are none.  But even if viewed in the hostile-work-environment context, "a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim[,]" but "'[t]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.'"  *EEOC v. WC&M Enters.*, 496 F.3d 393, 400 (5th Cir. 2007) (quoting *El-Hakem v. BJY Inc.*, 415 F.3d 1068, 1073 (9th Cir. 2005)).

not defendants in this lawsuit, and Daniels's conclusory allegations regarding the Individual Defendants cannot overcome their asserted right to qualified immunity. *See* Order [32] at 6 (citing *Khan*, 683 F.3d at 194). The Individual Defendants' motions are granted as to Daniels's claims.

13.    Daniels's and Rigby's Assignment to the Lot

Both Daniels and Rigby allege that because they are women, Defendants subjected them to unsafe, unsanitary, and demoralizing conditions at the City's impound lot. Compl. [1] ¶¶ 36–37. Specifically, they say they were denied access to restroom facilities, as "Defendants . . . would not share a key to enter the building," *Schultea* Reply [33] ¶ 83, which "forced [them] to use the restroom outside on the grass and rocks," Compl. [1] ¶ 37. They also contend that the lot was rodent infested, subject to violence, and otherwise unsafe. *Schultea* Reply [33] ¶ 84.

Plaintiffs certainly describe deplorable conditions at the lot, but an equal-protection claim requires proof of discriminatory conduct, and "conclusory assertions that [a plaintiff] was treated differently than other similarly situated [persons] are insufficient to state an equal protection claim." *Clark v. Owens*, 371 F. App'x 553, 554 (5th Cir. 2010). Defendants have therefore argued that Plaintiffs failed to plead facts plausibly suggesting that the conditions were based on their protected classes.

For example, Plaintiffs state that "Defendants" would not have subjected their "wives nor female children" to such conditions. *Schultea* Reply [33] ¶ 83. But Defendants observe that their female spouses and children are not valid comparators under the law because they were not employees—i.e., they were not similarly situated. Plus, as to the gender-discrimination claim, their wives and daughters are all women, so they are part of the same protected class. Defs.' Mem. [49] at 12. If Plaintiffs meant to suggest that these women were comparators, then

Defendants are correct, but it is more likely Plaintiffs were making a rhetorical point about the poor conditions.

Defendants also say that Rigby and Daniels were not the only officers assigned to the lot and that Plaintiffs fail to allege that male officers were treated more favorably. *Id.* at 12. That argument initially goes beyond the pleadings, but the observation about the lack of male comparators is true. Indeed, Plaintiff Melvin Williams (male) also complains about the conditions at the impound lot. *See Schultea* Reply [33] ¶ 84. Because Plaintiffs have offered no authority suggesting that subjecting all employees to the same bad conditions violated their clearly established equal-protection rights, Defendants' motion must be granted. *See* Order [32] at 11 ("Plaintiffs . . . will need authority explaining the protected class to which they belong and why the alleged acts violated clearly established law."). Finally, Plaintiffs did not plead individualized facts as to each Individual Defendant. *See id.* at 7 ("The reply must explain what each Individual Defendant allegedly did to support the specific claims against him."). Defendants' motions are granted as to these claims.[13]

### 14.    Plaintiff Keith Freeman's Claim

Freeman says Davis denied him leave and deferred compensation because he is white. Compl. [1] ¶ 48; *Schultea* Reply [33] ¶ 102. Specifically, he alleges that Davis "allowed certain black police officers, such as Tina Wallace, to get her/their deferred company time, but when [he] respectfully sought the same treatment he was denied." Compl. [1] ¶ 48; *Schultea* Reply [33] ¶ 102. Freeman specifically attributes these decisions to Chief Davis, though he also suggests Davis conspired with every other Defendant. *Schultea* Reply [33] ¶ 102.

---

[13] Individual Defendants did not address Melvin Williams's claims in their joint memorandum, so his § 1983 claims will move forward.

Defendants argue that Freeman failed to meet his burden as to Defendants other than Davis. Defs.' Mem. [49] at 13. They are correct; Freeman merely states as to them: "Plaintiff Freeman alleges that the City of Jackson, Jackson Police Department and each Defendant named under race discrimination(Please see exhibit S)." *Schultea* Reply [33] ¶ 103 (sic); *see also id.* (alleging that "named Defendants conspired and swindled around $50,000 of deferred time that legally belonged to him"). And Freeman's reference to "exhibit 'S'" (the EEOC right-to-sue letter) adds nothing as to the other Defendants. *See* Freeman Statement [33-19] at 1. Conclusory allegations of conspiracy are insufficient to meet Plaintiffs' burden. *See Twombly*, 550 U.S. at 556–57. Davis's motion is therefore denied; Freeman's claims against all other Individual Defendants are dismissed.

### 15. Plaintiff Cossandra Thomas's Claim

Thomas alleges that she applied for and was denied promotion to the SWAT team because of her gender. Compl. [1] ¶ 41. The SWAT Team has been all-male since 2018. *Id.* But the *Schultea* Reply never details which (if any) Defendant made the promotion decision, asserting instead that "ALL Defendants" discriminated against Thomas. *Schultea* Reply [33] ¶ 45.

Defendants argue that Thomas failed to "engage the allegation as it relates to each of the individual Defendants." Defs.' Mem. [49] at 8. That is somewhat true, but Thomas did incorporate her written statement into the *Schultea* Reply. *See Schultea* Reply [33] ¶ 45; *see also* Thomas Aff. [33-9]. There, Thomas says that the SWAT commander—tasked with selections— told her that she was denied because "Davis did not want me on the team." Thomas Aff. [33-9] at 3. Accordingly, Thomas has offered facts linking Davis to the disputed decision, and the all-male makeup of the team provides plausibility on causation. Obviously, basing an employment

decision on gender violates clearly established law. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting it is well-established that the law "strike[s] the entire spectrum of disparate treatment of men and women in employment") (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). Davis's motion will be denied as to Thomas's claim.

As for the other Individual Defendants, Thomas "avers that ALL Defendants are the violators of her being treated differently than male officers due to her protected trait of being a female." *Schultea* Reply [33] ¶ 45 (sic). She

> further alleges that the disparate treatment by The City of Jackson, Jackson Police Department, Mayor Lumumba professionally, E. Bradley Lumumba, aka, (Hondo) personally in directing the chief of police, James Davis, both deputy chief's Deric Hearn and Vincent Grizzell was so severe that she ended up leaving the Jackson Police Department.

*Id.* (sic). These are again conclusory assertions that do not explain what each Individual Defendant personally did, and there is no legal authority offered to show that their conduct violated clearly established law. *See* Order [32] at 6 (citing *Khan*, 683 F.3d at 194). The motions of Individual Defendants other than Davis are granted.

### 16.    Remaining Plaintiffs' Claims

The Complaint identifies 21 plaintiffs. As noted, the Court instructed Plaintiffs to explain—as to each Plaintiff—which claims they were asserting against which defendants and provide the factual and legal basis for those separate claims. "[T]he fact that Plaintiffs chose to join their claims in a single suit does not diminish their individual burdens to defend those claims against qualified immunity, which is itself context-specific." Order [32] at 17 (citing *Mullenix*, 577 U.S. at 12). Neither Plaintiffs' *Schultea* Reply nor their response to the Defendants' motions reference five previously listed Plaintiffs: DeJon Artberberry, Michael Pugh, Vanessa Johnson, Lateef Skinner, and Rizerio Camel.

Considering the Complaint, it is possible these Plaintiffs don't assert § 1983 claims against the Individual Defendants, which would explain why they were excluded from the Reply and response.  For example, Artbeberry seems to pursue breach of contract and misrepresentation.  *See* Compl. ¶ 60.  Pugh and Skinner are not factually discussed in the Complaint beyond the statement that they reside in Jackson, Mississippi.  *Id.* ¶¶ 12, 16.  Camel is listed in the preamble but is not included in the "parties to the complaint" section and is not otherwise mentioned.  *Id.* at 2.  In any event, there is nothing in the Complaint or *Schultea* Reply suggesting that these Plaintiffs met their burden to overcome qualified immunity; the Individual Defendants' motions are granted as to them.

In addition, the Court has attempted to fully review all claims presented in the Complaint and *Schultea* Reply.  The claims that are not specifically addressed in this Order are either conclusory, fail to state a claim based on the discrete conduct alleged, or lack legal authority suggesting a clearly established right.  The Court therefore grants the Individual Defendants' motions to dismiss those claims.

IV.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Individual Defendants' Motions to Dismiss [44, 45, 46, 47, 48] are granted in part and denied in part.[14]

Given the age of this case and the limited procedural stage it has reached, the Court concludes that an early mediation would be advisable to see whether the matter can be resolved

---

[14] For clarity:  Each claim alleged remains against the City and JPD.  All Individual Defendants continue to face the claims of Williams and Watts.  In addition to the claims of Williams and Watts, Davis still faces the disparate-treatment claims of Ingram, Arthur, Rigby, Freeman, and Thomas in addition to the Establishment Clause claim.  Mayor Lumumba's motion is denied as to Rigby as well.

or at least narrowed.  Accordingly, the parties are instructed to either retain a mediator or contact the assigned magistrate judge to set the case for settlement conference.  The parties are given 45 days from the date of this Order to mediate the dispute.

The case, and all deadlines, will be stayed until the mediation concludes; no motions shall be filed during the stay.  If the case is not fully resolved, then the Court will lift the stay and all deadlines will resume.  It is the Court's hope that the case can at least be narrowed through settlement as to some claims or parties, which would make everyone's task easier during the next round of motions.

**SO ORDERED AND ADJUDGED** this the 30th day of September, 2022.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE