UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

COSSANDRA THOMAS                                                                                      PLAINTIFF

V.                                                                       CIVIL ACTION NO. 3:23-CV-545-DPJ-ASH

CITY OF JACKSON, CHIEF JAMES
DAVIS, and JACKSON POLICE
DEPARTMENT                                                                                            DEFENDANTS

ORDER

Former Jackson Police Department officer Cossandra Thomas claims that she was denied a promotion because she is a woman. Defendants seek summary judgment, and the Court grants their motion [103].

I.      Relevant Facts and Proceedings

In 2020, current and former employees of the Jackson Police Department sued JPD, the City of Jackson, and various others for alleged civil-rights violations and state-law torts. Compl. [1]. The Court sorted through various motions to dismiss in its September 30, 2022 Order [68], granting some and denying others. After a settlement conference further narrowed the parties and claims, the Court severed six Plaintiffs' cases into three civil actions. *See* Order [70]. Two Plaintiffs were assigned to this case, but Candice Ingram voluntarily dismissed [76] her suit, leaving only Cossandra Thomas. Thomas alleges that the City treated her less favorably than men when it refused to reinstate her to its SWAT team.

Thomas first served on the SWAT team beginning in 2017. During that tenure, she was dating another officer, Torrence Mayfield, and, after "mishaps within the relationship," broke two windows at his home. Thomas Aff. [103-2] at 8. Mayfield reported the incident to the Hinds County Sheriff's Department and filed a malicious-mischief charge against Thomas. *Id.*;

1

*see* Court Abstract [103-7].¹  But Mayfield "decided that he still 'love[d]' [Thomas] and dropped the charges."  Thomas Aff. [103-2] at 8.

Sometime later, Mayfield began touching and kissing Thomas on a JPD elevator.  *Id.*  "[A]n officer who watched the incident from the control room" reported it.  *Id.*  Thomas says the encounter was unwanted; she wasn't disciplined, but Mayfield "received suspension days."  *Id.*  When JPD investigated the elevator incident, Mayfield brought up the broken windows, informing his friend, Defendant James Davis.  *Id.*  Davis was then JPD's Chief of Police, and he told the SWAT commander that Thomas needed to be investigated and removed from the team if Mayfield's allegations were true.  *Id.*  When Thomas was questioned, she explained what had happened and promptly resigned from the SWAT team, remaining on the police force in other positions.  *Id.*  "Several months later," Thomas again tried out for the SWAT team, but she says Davis blocked her candidacy.  *Id.* at 9.

None of this is factually disputed.  Defendants agree Thomas was investigated after breaking Mayfield's windows and resigned her post after admitting her conduct.  And Davis admits that when he discovered Thomas's efforts to reapply to the SWAT team—which he considered an elite unit—he informed the commander that she was unfit "because of her criminal history."  Davis Decl. [103-3] at 1.²

Thomas says the real reason Davis interfered is her sex and that he, the City, and JPD therefore violated her rights.  Her still-pending claims fall under Title VII of the Civil Rights Act

---

¹ The abstract identifies Thomas by her former name, Feltson.  Thomas Aff. [103-4] at 2.

² Thomas faults Davis for submitting a declaration under 28 U.S.C. § 1746 rather than an affidavit.  Pl.'s Mem. [106] at 3.  But Rule 56(c)(1)(A) allows a movant to cite "affidavits or declarations," and the Fifth Circuit has expressly approved their use.  *See Keiland Constr., L.L.C. v. Weeks Marine, Inc.*, 109 F.4th 406, 418 (5th Cir. 2024) (rejecting argument that district court erred by considering § 1746 declaration).

of 1964 and 42 U.S.C. § 1983 for an alleged equal-protection violation. Defendants seek summary judgment; the issues have been briefed.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific

facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

The party opposing summary judgment must identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 & n.7 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992). And disputed fact issues that are "irrelevant and unnecessary" to deciding the motion will not be considered by the Court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.    Discussion

Defendants construe Thomas's claim as alleging sex discrimination under Title VII and the Equal Protection Clause. Defs.' Mem. [104] at 1. They also infer a retaliation claim under Title VII. Under any theory, they offer a simple defense: there's no evidence Thomas was denied readmission to the SWAT team for any reason other than the criminal charges she faced for breaking her boyfriend's windows. This Order first considers the sex-discrimination claims against Davis and the City and then addresses Title VII retaliation.

A.    Sex Discrimination

Title VII prohibits employment discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Equal Protection Clause forbids states and their political subdivisions from denying "to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. That includes the right to equal protection in "public employment."

4

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997) (citation omitted).  Section 1983 creates a private right of action for alleged constitutional violations.

Before moving on, it is necessary to sort out which Defendant faces which claims.  "Only 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under [T]itle VII."  *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994).  The Title VII sex-discrimination claim is therefore limited to the City.  Thomas may, however, pursue § 1983 equal-protection claims against both the City and Davis.

As a final preliminary note, Davis asserts qualified immunity from the equal-protection claim, which puts the burden on Thomas to show that Davis violated her equal-protection rights and that those rights were clearly established when he did.  *Cleveland v. Bell*, 938 F.3d 672, 675–76 (5th Cir. 2019).

Davis seems to concede the clearly-established-law prong.  So, the question is whether Davis violated the Equal Protection Clause.  To answer that question, the Court turns to the analysis applicable under Title VII because the "inquiry into intentional discrimination is essentially the same for individual actions brought under [S]ection[] . . . 1983[], and Title VII."  *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).[3]

---

[3] Thomas mistakenly argues that qualified immunity fails because the Court rejected it when Davis sought dismissal under Rule 12(b)(6).  Pl.'s Mem. [106] at 2 (citing Order [68]).  True, the Court denied Davis's Rule 12(b)(6) motion.  But that just means Thomas pleaded a plausible claim that survived Davis's qualified-immunity defense at the pleading stage.  A defendant may raise the defense at both the pleading stage and the summary-judgment stage.  *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).  And under Rule 56, the plaintiff must produce evidence.

1. The Legal Framework

For "disparate-treatment cases, proof and finding of discriminatory motive is required." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006)).  And when, as here, a plaintiff's case rests on circumstantial (not direct) evidence, both Title VII and § 1983 apply the same burden-shifting framework announced in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

Under that test, Thomas must first show a prima facie case of discrimination. *Saketkoo v. Admins. of Tulane Educ. Fund*, 31 F.4th 990, 998–99 (5th Cir. 2022).  If she does, Defendants must show a legitimate, nondiscriminatory basis for their action. *Id.*  The burden then returns to Thomas to create a fact issue whether that basis is mere pretext for discrimination. *Id.*

a. Prima Facie Case

To show a prima facie case, Thomas must offer evidence of four things: "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Id.* at 997–98 (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).

Defendants don't contest the first two elements, although they note that Thomas's criminal history may have disqualified her from the SWAT team.  As to the third element, they argue that no adverse employment action occurred because the desired move was lateral.  Defs.' Mem. [104] at 9 (citing *Burger v. Central Apt. Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999)).  The Court assumes Thomas has created a fact question on this point.

That leaves the fourth element.  To meet this burden, Thomas must show that men were treated better "under nearly identical circumstances." *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253,

259 (5th Cir. 2009).  Although "nearly identical" differs from "identical," it is still an exacting standard.  "Employees with different supervisors, who work for different divisions," "who were the subject of adverse employment actions too remote in time from that taken against the plaintiff," and "who have different work responsibilities" generally are not similarly situated to one another.  *Id.* at 259–60.  And if a difference between the plaintiff and the comparator "'accounts for the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis."  *Id.* at 260 (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).  Thomas says she meets this test because Defendants treated unidentified males and Officer Arron Allen better than her.

    ***Unidentified male comparators.***  Thomas first claims "[t]here were other males on the SWAT Team who was [*sic*] actually the subject of criminal activity, and so bad that a woman ended up in the hospital."  Pl.'s Mem. [106] at 5.  But she neither identifies these other men nor offers evidence—or even argument—showing they were similarly situated.  *See Lee*, 574 F.3d at 259; *see also Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 827 (5th Cir. 2022) (affirming summary judgment and holding, "We cannot compare Owens to other RSMs when she fails to name or otherwise identify comparator RSMs, much less explain why they are similarly situated").

    As noted, Thomas was "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence supported [her] claim."  *Forsyth*, 19 F.3d at 1537.  Without record evidence, there is no way to know whether these men were treated better under nearly identical circumstances, and so no "material fact issue" exists.  *Id.*

7

***Officer Arron Allen.*** Thomas next contends that Defendants allowed Officer Allen (a male) to remain on the SWAT team despite "a criminal domestic crime." Pl.'s Mem. [106] at 4; *see also id.* at 10 (stating that Allen had "a criminal history"). She supports this claim with two exhibits, (1) an affidavit from JPD supervisor Randy Avery and (2) a copy of a 2016 civil complaint filed in this Court against the City of Jackson and former Police Chief Lee Vance.[4]

Starting with Avery's affidavit, he states that he was Allen's supervisor, he responded to a domestic-disturbance call involving Allen and another JPD officer (Tina Bianchini), and "the two Officers had to go to court regarding the domestic charges." Avery Aff. [105-6]. The first problem is that Avery never says Allen was on the SWAT team. As Defendants note, Thomas argues that Allen was on that team, but she never cites evidence to support the assertion, and there appears to be none in the record. Defs.' Reply [107] at 2-3.

That creates a material distinction between Allen and Thomas. Davis's unrebutted testimony establishes that Thomas's criminal charges were a problem because the SWAT team is an elite unit. Davis Decl. [103-3] at 1. In fact, Thomas was not fired, she was reassigned within JPD. In this context, employment with the SWAT team is necessary to show the two were treated differently under "nearly identical" circumstances. *Lee*, 574 F.3d at 259–60. And that requires evidence, not argument. *Forsyth*, 19 F.3d at 1537.

Even if Allen was on the SWAT team during the relevant time, Defendants highlight another problem. Unlike Thomas, there is no evidence that Allen was ever charged with a crime or committed one. Defs.' Reply [107] at 2. Avery's affidavit never reveals who called JPD, who was the aggressor, or whether Allen was charged with anything. *See* Avery Aff. [105-6]. He

---

[4] Defendants object to Avery's affidavit, saying he wasn't disclosed to them in discovery. Defs.' Reply [107] at 3. But they haven't moved to strike it. Anyway, because the affidavit fails to support Thomas's case, the issue seems moot.

8

just says the two "had to go to court regarding the domestic charges." *Id.* If Allen had to go to court because he was the victim, he would not be similarly situated with Thomas who admittedly broke out her boyfriend's windows. Again, it is not enough to argue that Allen has "a criminal history." Pl.'s Mem. [106] at 10. Proof is required, and none has been cited. *Forsyth*, 19 F.3d at 1537.

Bianchini's civil complaint against Allen doesn't fill those gaps. *See Bianchini* Compl. [105-7]. For starters, an "unverified [complaint] does not constitute competent summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, "[a] court may not rely on the mere factual allegations in an unverified complaint to make summary-judgment rulings." *Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020).

But even if the Court could consider Bianchini's complaint, the pleading guts Thomas's argument. Bianchini pleaded that *she* was charged with a crime after the incident and Allen was not. *Bianchini* Compl. [105-7] at 1. If true, Allen and Thomas are not similarly situated. The *Bianchini* complaint also states that the incident with Allen occurred in 2015. *Id.* That's "too remote in time" to make Allen a proper comparator because the decision makers were different; Bianchini sued then-chief Lee Vance—not Davis. *Lee*, 574 F.3d at 259. "[E]mployees who have different . . . supervisors are not considered 'similarly situated.'" *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 484 (5th Cir. 2023), *as revised* (Aug. 4, 2023) (citing *Lee*, 574 F.3d at 259–60).[5]

"Because [Thomas's] arguments are conclusory, and the record doesn't show that [Allen] was similarly situated to her, she fails to make out a prima facie case of discrimination."

---

[5] The Court dismissed Bianchini's complaint under Rule 56. *Bianchini*, No. 3:16-CV-510, Order [127]. The undisputed facts the Court reviewed there would hurt Thomas's argument if they could be considered here.

9

*Shahrashoob v. Tex. A&M Univ.*, 125 F.4th 641, 652 (5th Cir. 2025).  The analysis could end here for the Title VII and equal-protection sex-discrimination claims, but the Court will examine Thomas's other arguments under the burden-shifting analysis.

        2.        Legitimate Nondiscriminatory Reason

Davis and the City have presented a legitimate, sex-neutral reason for not accepting Thomas to the SWAT team.  A criminal history has been held as a legitimate reason not to hire an applicant.  *Thomas v. Trico Prods. Corp.*, 256 F. App'x 658, 662 (5th Cir. 2007); *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 378 (5th Cir. 2007).

        3.        Pretext

Because Defendants offered a legitimate nondiscriminatory reason for the decision, Thomas must show pretext.  She may do that "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (quoting *Reeves*, 530 U.S. at 143).

Again, there is no evidence of disparate treatment.  Thomas does, however, offer arguments that might fit within the unworthy-of-credence approach.  For example, Thomas points to the abstract of her criminal case, which reflects the charge against her was remanded to the file.  Abstract [103-7] at 1.  From that undisputed evidence, she argues that "no such criminality was ever performed by plaintiff."  Pl.'s Mem. [106] at 6.  That's incorrect.  Thomas herself admitted breaking out her boyfriend's windows.  Thomas Aff. [103-2] at 8.  She also states that she told her commander what happened and immediately resigned because of her conduct.  *Id.*  And, as she puts it, Mayfield "decided that he still 'love[d]' [her] and dropped the charges."  *Id.*  In other words, the charges were dropped at Mayfield's request, not because "no such criminality was ever performed by plaintiff."  Pl.'s Mem. [106] at 6.

10

In addition, Davis never claims Thomas was blocked from the SWAT team for a conviction. Davis says that he was aware Thomas had "been charged with malicious mischief" and that she "admitted to the charges" when questioned by her commanding officer. Davis Decl. [103-3] at 1 (emphasis added). He later blocked her attempt to rejoin the SWAT team based on her "criminal history." *Id.* None of that is disputed with record evidence. Thomas admits doing what Davis thought she did. Thomas Aff. [103-2] at 8. And the inquiry is "whether [Davis's] perception of [Thomas's] performance, accurate or not, was the real reason for her termination." *Laxton*, 333 F.3d at 579 (quoting *Evans v. City of Houston,* 246 F.3d 344, 355 (5th Cir. 2001)).

Thomas offers a few additional observations. First, she notes that she was the only woman to serve on the SWAT team. Pl.'s Mem. [106] at 3. This circumstantial evidence might be probative in some contexts. For example, the ultimate question at this stage "turns on the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Laxton*, 333 F.3d at 579 (cleaned up, citations omitted). But here, Thomas failed to present a prima facie case, the evidence is not overly probative of pretext, Thomas admitted the conduct that motivated the decision, and she found no valid comparators. *Cf. Vance v. Union Planters Corp.*, 209 F.3d 438, 444 (5th Cir. 2000) (noting plaintiff's status as only woman president treated differently than others in case also involving direct evidence of discrimination). In any event, Thomas offers no legal analysis suggesting that this fact meets her burden.

Second, Thomas cites positive recommendation letters she received when leaving JPD. Pl.'s Mem. [106] at 5. But that negates neither the criminal conduct she admitted to nor Davis's reason for blocking her from rejoining the team. Davis's unrebutted declaration describes the

11

SWAT team as having higher standards. Davis Decl. [103-3] at 1. Consistent with that, he allowed Thomas to continue working for JPD despite her admission; she just couldn't work for the SWAT team. So while she may have done a fine job in her new roles and left on good terms, that does not prove pretext.

For these reasons, Thomas has failed to show Davis blocked her from rejoining the SWAT team because she is a woman. And without a jury question on that issue, Thomas cannot prevail on her Title VII claim against the City or on an equal-protection claim under § 1983.

### C.  *Monell* Claim Against the City

Even had Thomas proved a constitutional violation, that would not be enough to find the City liable. There is no respondeat superior liability under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). So "[p]roof of municipal liability . . . requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

The City argues that no *Monell* liability exists because Thomas has provided no evidence proving any of these three elements. Defs.' Mem. [104] at 13–17. That's true, and Thomas leaves those arguments unaddressed in her summary-judgment memorandum. *See Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) ("A plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims.").

Assuming she has not abandoned her *Monell* claim, she has not established it. The closest Thomas comes to addressing an element for municipal liability is her reference to the City's employee handbook. Pl.'s Mem. [106] at 2–3. As she correctly notes, the City adopted a

policy *precluding* sex discrimination, but she has not shown how a policy precluding discrimination was the "moving force" behind discrimination. *Pineda*, 291 F.3d at 328. Summary judgment for the City is proper on Thomas's claims.

      D.      Retaliation

It remains unclear whether Thomas pursued a Title VII retaliation claim, but Defendants briefed the issue anyway. A retaliation plaintiff must offer proof of three elements: "1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens*, 33 F.4th at 835. A protected activity means either opposing a practice barred by Title VII or participating in a Title VII proceeding. *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

As Defendants correctly point out, Thomas didn't do either of those things before Davis blocked her from the SWAT team. In the Amended Complaint (or *Schultea* Reply), Thomas alleges that Davis kept her off the SWAT team "because she was a female and reported sexual harassment conduct, which was shown in a video to Chief Davis, of his friend Officer Mayfield," the same Mayfield whose windows she broke. Am. Compl. [33] ¶ 45. But under Rule 56, she must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted). Looking past her pleadings, Thomas's own affidavit states that another officer reported the elevator incident, not Thomas. Thomas Aff. [103-4] at 2. And, as Defendants also note, even if Thomas could surmount the prima facie bar, she has not shown pretext.

In any event, Thomas appears to abandon this claim. Neither her summary-judgment response nor her summary-judgment memorandum mentions Title VII retaliation, she makes no arguments specific to retaliation, and she cites no authority or record evidence about it. The

13

Court therefore finds that she has abandoned the claim. *Terry Black's Barbecue, L.L.C.*, 22 F.4th at 459.

  E.  Miscellaneous Issues

Defendant JPD did not join in this summary-judgment motion. But it's well established that, in Mississippi, a police department is not a political subdivision that can sue or be sued. *Berry v. City of Clinton*, No. 3:16-CV-820-DPJ-FKB, 2018 WL 11275433, at *4 (S.D. Miss. Jan. 24, 2018) (Clinton P.D.); *Bradley ex rel. Wrongful Death Beneficiaries of Bradley v. City of Jackson*, No. 3:08-CV-261-TSL-JCS, 2008 WL 2381517, at *2 (S.D. Miss. June 5, 2008) (JPD); *Hammond v. Shepherd*, No. 3:05-CV-398-HTW-JCS, 2006 WL 1329507 (S.D. Miss. May 11, 2006) (McComb P.D.). Suits against a police department are therefore brought against the municipality. *Berry*, 2018 WL 11275433, at *4.

Likewise, the claim against Davis in his official capacity is the same as a claim against the City. *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It therefore appears such claims are "superfluous" and ripe for dismissal. *Felton v. City of Jackson*, No. 3:18-CV-74-TSL-RHW, 2018 WL 2994363, at *2 (S.D. Miss. June 14, 2018).

"While district courts may grant summary judgment *sua sponte*[,] they must first give the parties notice and a reasonable time to respond." *Keck v. Mix Creative Learning Ctr., L.L.C.*, 116 F.4th 448, 457 (5th Cir. 2024) (citing *D'Onofrio v. Vacation Publ'ns., Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (quotation marks omitted)). Thomas must show cause why these claims should not be dismissed.

IV.     Conclusion

The Court has considered all arguments presented. Any not specifically addressed would not change the outcome. Defendants' motion for summary judgment [103] is granted.

Thomas must, within ten days of this Order, show cause why the Court should not dismiss JPD and the official-capacity claims against Davis. If she does, JPD and Davis may respond within seven days, and Thomas may reply seven days after that. If Thomas fails to respond, those claims will be dismissed, and final judgment will be entered.

**SO ORDERED AND ADJUDGED** this the 15th day of May, 2025.

s/ *Daniel P. Jordan III*<br>UNITED STATES DISTRICT JUDGE